The next case on the call, the DACA, is Agenda Number 9-125973 West Bend Mutual Insurance Company v. Krishna Schaumburg Tan. Mr. Thomas Lucas. Good morning, Your Honors. Tom Lucas for the appellant, West Bend Mutual Insurance Company. Your Honors, this appeal presents an issue of insurance coverage for an underlying class action lawsuit that relates to the Biometric Information Protection Act, or BIPA as it's called. BIPA has received a lot of attention in the press and in the courts, but this is the first occasion for this Court to consider an insurance coverage case relating to BIPA. And the appeal presents two main issues. The first is whether, in the underlying case, Ms. Sakura, her allegations against the West Bend insured Krishna Schaumburg Tan, that Krishna disclosed biometric information to a third-party vendor, came within the policy's coverage for personal injury for the publication of material that invaded a person's right of privacy. And if the complaint alleges publication of information that invades the right of privacy, then does the insurance policy's exclusion for the violation of statutes, that the exclusion excludes claims for the violation of statutes that prohibit or limit the disclosure of information, does that exclusion apply to the allegations of the complaint that Krishna disclosed biometric information to a third-party vendor, Sunlink? And the appellate court held, number one, that publication was alleged by the disclosure of Sakura's biometric information to the third-party vendor, and therefore the invasion of privacy coverage was implicated. And the appellate court also held that the violation of statutes exclusion was inapplicable. But the appellate court was wrong on both points. The complaint does not allege the publication of information by Krishna. The disclosure, as alleged in the complaint by Krishna of communicating biometric information to a single third-party vendor, is not disclosure to the public, which is how the term is defined for the invasion, the publication term is defined for the invasion of privacy coverage. And number two, the violation of statutes exclusion applies because BIPA is a statute that limits or prohibits the disclosure of information, and therefore BIPA comes within the statutes or the exclusions express terms and should apply. So what does public mean? Well, publication, Your Honor, is, as we argue, means the disclosure for the invasion of privacy coverage means the disclosure of information to the public. And that is how this Court interpreted the term in Valley Forge v. Swiderski Electronics. So why isn't the vendor, the third-party vendor, public? Well, it's a single disclosure. The allegation is that Krishna disclosed biometric information to a single third-party vendor. So would it have to be a disclosure to more than a single party? Is that what you're saying? That is our argument, Your Honor. That is our argument based upon this Court's opinion in Valley Forge v. Swiderski Electronics. What was the reason for the vendor to receive the information? I don't – it's not alleged in the complaint. But it would be a redisclosure. Excuse me, Your Honor? Redisclose, to redisclose the information. Well, that's not alleged in the complaint. And the case in terms of discovery didn't develop what Sunlink was doing with the biometric data. So all we have is the allegation, the sole allegation in the complaint, that Krishna disclosed biometric information to this third-party vendor, Sunlink. There is no other allegation that further disclosures were made, that the data was – the biometric data was publicized in any way other than to this third-party vendor. And in Swiderski Electronics in Valley Forge, this Court said that publication for invasion of privacy meant disclosure to the public. And Valley Forge was – it wasn't a BIPOC case. It was a TCPA class action case. And there the Court construed not only the term publication, but also the term material and the term invasion of privacy all in the – in the coverage to determine – to both interpret the coverage and then apply that interpretation to the facts of the underlying case. Mr. Lucas, I just have to go back to what Justice Garmer was asking about, is that the vendor is – was going to be using this information for a national enrollment, LATN Enterprises. So that means the national membership database. So other people would have access to this national database. None of that is alleged in the complaint, Your Honor. We don't know how the biometric data was utilized other than it was disclosed – To a vendor that was going to have the information into a national database. But it's not alleged that the data itself, the biometric data itself, was disclosed to anybody other than Sunlink. So there is – there is no allegation that the biometric data was communicated to the public at large or any large numbers of persons. That's the only allegation they made in the complaint. And in Valley Forge, the court looked at the TCPA case and the same coverage, the invasion of privacy coverage. And the term publication isn't defined in the policy. So the court looked to dictionary definitions to find the plain, ordinary, and popular meaning of the term. And the definitions selected all involved communication to the public. Counsel, you're very specific to limit this to the privacy area. On the defamation area, publication has a different definition, does it not? Yes, it does, Your Honor. So we have two policy provisions, one that follows the other, where the same exact language is used. And in one, the first one, it's a defamation, publication could be to one person. But in the very next policy section, the word publication has to be to at least, according to Valley Forge, numerous individuals. So my question is, number one, doesn't that create an ambiguity that would then be construed against the insurance company? And number two, how is a reasonable policyholder supposed to distinguish between these two things? Well, Your Honor, first off, I would suggest that on the ambiguity side, you know, the court looks to the, you know, the dictionary definitions of the term to determine its plain, ordinary, and popular meaning. And the dictionary definition selected by the court in Valley Forge for publication for invasion of privacy, all involved definitions that included the communication to the public component. The court didn't select any definitions of publication related to defamation. So it is true. The defamation, the slander and libel coverage is one paragraph, and the next paragraph is invasion of privacy. But those are separate coverages. They're not written in the same paragraph. If they're written in the same paragraph as was done, I think, in older policies, then I'd be hard pressed to get up here and say publication should be treated differently in the policy, because the policy is written that way, defamation and invasion of privacy together. They're not. They're separated. And also, if we agree that a definition, a dictionary definition reflects the plain, ordinary, and popular meaning of a term, we know that the definitions, some of them, reflect the fact that in the defamation context, publication is considered differently, that a single disclosure in the defamation context is enough. So that distinction is made in the dictionary definitions. So I think we have to accept the fact that the common, the reasonable insured would recognize that, because that's recognized in the dictionary definitions. That's what the popular understanding of the term for defamation means, as opposed to what the term means for invasion of privacy. And I'd also suggest that this is a distinction that's made of the common law. The common law distinguishes publication in defamation differently from publication in the invasion of privacy. And courts often look to the way the common law treats these advertising injury and personal injury coverages. They will consult the common law treatment of those torts to gain an understanding of what the coverage should mean, so that the coverage isn't expanded beyond what was contemplated by the parties when the policy was issued. So when when we accept the fact that a common law publication is treated differently in defamation versus invasion of privacy, that in the policy itself, the coverages are separate. It's defamation is separate coverage from invasion of privacy. And the definitions that this court selected for publication in Valley Forge all included the two of the public component. I think the way to interpret the coverage, the invasion of privacy coverage, is the publication element can be established only by the insurance communicating to the public, to a large group of people as opposed to an individual third, and in this case, an individual third party vendor. You talked about the expectation of the policyholder. If the policyholder in this case, being a company, takes all of its clients' biometric information, every single client they have, and they sell it to one vendor, there's no coverage. But if they take one client's piece of biometric information and sell it to numerous other vendors, then there is coverage. I think that's correct, Your Honor. And a reasonable policyholder would understand the difference between those. If we're focusing on what the term publication means in the coverage, yes. And when we look at the we cited a number of cases from outside of Illinois that considered insurance coverage for class action lawsuits involving the violation of the Fair and Accurate Credit Card Transaction Act, called FACTA. And those cases involved an insured who uses, takes credit cards, providing the credit card user with a receipt that contained more information on the receipt than was allowed by the statute. So the suits, the class action suits were the insureds in providing these receipts to individuals with more private information than was permitted, was invading those individuals' right of privacy. But the courts in all three cases held that the invasion of privacy coverage was not implicated because even though it was a class action and thousands of people were given these receipts by the insured that contained the improper information, publication wasn't alleged because giving a receipt to an individual was not disclosing information to the public. And that's the same situation here. Providing, the allegation is that Krishna provided information to, the biometric information to a single third party vendor. There is no public disclosure. If there was, we wouldn't be here. There wouldn't be a case because, at least on the publication issue, because disclosure to the public, as we know from Valley Forge, is publication under the policy. And therefore, the invasion of privacy coverage is potentially implicated. Going to my second issue, the invasion of privacy exclusion. The exclusion applies to statutes which prohibit or limit the disclosure of information. The appellate court held that the exclusion did not apply to BIPA because it determined that BIPA was not a statute that precluded specific methods of communicating information. And its construction of the exclusion was based upon the use of the term methods in the title and the fact that paragraph one of the exclusion specifically mentions TCPA and paragraph two of the exclusion specifically mentions can't spam. And so the appellate court said that the exclusion applied to statutes like TCPA and can't spam, which prohibited specific methods of communication. But that construction by the appellate court nullified paragraph three of the exclusion, which applies to any statute which prohibits or limits the disclosure of information. And now the appellees, Ms. Zucker in her brief to this Court, attempts to support the appellate court's interpretation of the exclusion by relying on the ad justum generis doctrine, meaning the use of the term other in paragraph three of the exclusion means that the exclusion applies to TCPA, can't spam, and other similar statutes. But ad justum generis doesn't apply because other does not follow TCPA and can't spam in the exclusion. The exclusion is written as any statute other than. And so the appellate court was incorrect. Thank you, Your Honor. Thank you. Mr. Thomson. Thank you. Good morning, Your Honors, and may it please the Court. My name is Ben Thomson. I'm here today representing the appellee, Claudia Secura. Your Honor, as counsel discussed with you just a few moments ago, there's two issues in this case. One's the primary question of coverage, whether Ms. Secura's allegations fall under the Christiana Tan's invasion of privacy coverage, and the second is the statutory exclusion, which Mr. Lucas touched on a bit at the end of his argument. On the first point, our position is essentially the appellate court got it exactly right, right? The question is what the layperson would understand the term publication to mean when reviewing it in the context of the invasion of privacy coverage. And as the appellate court noted, all of the dictionary definitions have multiple definitions for the term publication. They include the ones discussed by this Court in Valley Forge, and then they incorporate narrower disclosures, such as in Blacks, the limited or private disclosures of information. In Oxford, the disclosure of information to just a third party or other limited representatives of the public. And the takeaway from all of this is that the layperson in the position of the insured would understand, as several courts have noted, including the Seventh Circuit in Defender Security, the Supreme Court of Connecticut in the Springdale Donuts case that we cite in our brief, would understand that in the context of invasion of privacy coverage, the insured would understand the term publication simply to mean the release of information by the entity holding it, or the individual holding it, by multiple courts. Now, Valley Forge, or excuse me, West Bend's position in this case is that when this court addressed the term publication in the context of invasion of privacy coverage, what it concluded was that in every instance, you need a broad to the public dissemination of information. And that can't be right for several reasons. First of all, as I just discussed, the dictionary definitions don't support it. Second, as Your Honors were discussing, the policy itself uses the exact same term, oral or written publication of material, to define the scope of both privacy offenses, defamation offenses, and as Your Honor noted, publications in the defamation context, it's undisputed that that can be satisfied by a single disclosure to a single individual. And when the insured sees those two policy terms listed subsequently, as the appellate court noted, there's nothing to indicate to that lay insured that the scope of the exact same term should vary from one policy provision to the next. And one thing the appellate court did not address, but I would encourage Your Honors to look at, is that the policy also has specific exclusions related to the oral or written publication of material. There are two of them, right? One addresses the oral or written publication of material that happens before the policy period, that's excluded from coverage. And the other addresses the oral or written publication of material that the insured knew was false at the time the insured made it. And so just like the consecutive affirmative policy provisions don't distinguish between that identical term, neither do the exclusions. And so the insured is presented with four uses of the term oral or written publication of material, and one of them is oral or written publication of material. And there's nothing to indicate to the insured that he or she should treat, oh, publication different when it's used here, different when it's used here, that sort of thing. As multiple courts have noted in cases like this, the insured is perfectly capable, excuse me, the insurer is perfectly capable of drafting insurance policies in any way it chooses, and if it wanted to limit the way the term publication was used in any of these specific policy provisions, it could and should have done so. But the insured can't be faulted for the insurer's decision to not do that. Another thing that Your Honors discussed with counsel was, Your Honor pointed to, I believe there's a footnote in our brief, which references that in addition to this disclosure to the third-party vendor, Sunlink, there were obviously additional disclosures, right? There's allegations that MISECURE's information had to be transmitted to the national database, which there's not details about this because, of course, we didn't know it at the time that we gave our allegations, but those required the additional disclosures of MISECURE's biometric information to additional individuals. So that her information could be inserted into this national database. And so one thing Your Honor was discussing was, well, what if you have an insured's disclosure of one customer's biometric information to more than one vendor? And what counsel replied was, well, that would be a publication, because that more closely approximates what this court was talking about in Valley Forge. And so if MISECURE can extrude the allegations of the underlying complaint favorably in favor of coverage, there's no reason, even if the court takes this same definition that was used in Valley Forge and tries to fit it on the facts that issue here, there's no reason why the court would find that coverage does not apply. Because, as we just discussed, there was this disclosure of her information to multiple individuals. And then one other thing I would like to discuss briefly on the publication issue is, counsel has encouraged this court to look to the common law to see how the term publication is treated differently, depending on where it's used. In their brief, they mostly talk about the tort of public disclosure of private facts, which we agree has a publicity element, right? They cite Defender Security, the Seventh Circuit case, the fact that MISECURE's disclosure of public information that looks at the difference between that publicity element and the term publication, noting that publicity usually requires a broad, to the public, dissemination of information in the context of the tort, the public disclosure of someone's private facts, as against the term publication, which is the one used in the policy here, that is narrower and  narrower than the term publication. Another case that West Bend cites in its brief is Roarburn v. Lampert, which is a appellate court decision from the First District here, which also went into the context of that specific tort, the public disclosure of private facts. And one thing that that court noted is that under Illinois law, as is the case in many states, context matters, right? It's not always that you need to publish someone's private data in a newspaper in order to have to look at the information that's disclosed and who the information was disclosed to, because a particular disclosure to a particular public may satisfy the publicity element, even though there isn't a broad published, to the public, dissemination of information. And then once you look at the actual privacy offense at issue here, the Biometric Information Privacy Act, which, as this court noted in Rosenbach v. Six Flags, does not have a broad disclosure, all the protections provided by that act are violated upon a single disclosure of a person's information or a single failure of an entity collecting biometric information to not do what the statute requires, right? So this is another instance where, like defamation, a single disclosure is enough to violate the privacy interests at issue. And then one other thing I think it's important to discuss briefly and realize is the context in which this court was discussing the term publication in Valley Forge. And the appellate court hit on this, right? The appellate court recognized that the privacy violation in Valley Forge, it was a seclusion interest that was at issue. A seclusion is a communication from one party to another. And that's what Valley Forge involved, right? It was a communication from the defendant to the plaintiff. And so the question that this court had to answer in Valley Forge is, can you define the term publication in a way to cover that kind of seclusion violation? And on the publication issue, this court answered that yes, there is a definition that encompasses that, because publication can mean the broad disclosure of a person's information. In that case, there was a broad fax-spam advertising campaign. So even though there was a direct defendant to plaintiff communication, it nevertheless fell within the scope of coverage. And then you contrast that with the FACTA cases that counsel was just talking about, right? FACTA is a case that doesn't involve seclusionary interest. It involves secrecy interest, the secrecy of a person's credit information, among other things. And that's why the statute prohibits businesses from printing too much information on credit card receipts, is to protect the privacy of that information. So the question addressed by all those courts is that when you have a secrecy interest at issue, can you have an invasion of privacy where you have a direct disclosure from a defendant to a plaintiff of his or her own private information? And the answer to that question is, of course, no, right? And that's why all those courts also focused on, you know, privacy on the definitions of the term they did, because there's no way that you can find that there's invasion of privacy coverage where you have a disclosure directly from the defendant to the plaintiff, at least when you're talking about secrecy interest, which is what we're talking about here. And again, to bring the discussion back to Rosenbach and the First District's decision in, well, our case, Secura v. Krishnatan, a single disclosure to a single other party is enough to violate the act and implicate the privacy interest that the Illinois legislature intended to protect. And so all those reasons are why taking West Bend's position and limiting the invasion of privacy coverage is just artificial, does not comport with the lay understandings of the term, nor does it track the privacy offenses that are available under Illinois law. So I did want to take a few moments to also talk about the statutory exclusion that counsel touched on at the end of his argument. Again, this is another one where the appellate court got the analysis exactly right. In fact, it called the analysis easy. What the appellate court set out to do was to harmonize all the different parts of the exclusion, and that started with the title, right? The title said that it only applies to certain statutes that regulate methods of sending information like e-mails, faxes, or phone calls. It goes on to list two statutes like that, the TCPA and the TCR, which regulates faxes and phone calls, the CAN-SPAM Act, which regulates e-mails, and then it provides the catch-all provision and says other statutes like those, those are outside the scope of coverage, too. And so what West Bend is suggesting here, contrary to what it presents to this Court, is that what the Court should do is take that last section, this Section C, consider it in isolation, and because Section C by itself doesn't have the words methods, you should ignore the rest of the exclusion, which does use that specific term and references those specific statutes. But as the appellate court correctly found here, this Court is not at liberty to do that, just based on how an ordinary person would read that policy exclusion coverage as well. And the one thing I did want to note, counsel didn't bring it up today, but in their reply brief, one thing West Bend points to is this Illinois Bell case, another appellate decision for the proposition that the heading of a statute in terms of statutory construction can't control over a more specific statutory provision. But if you go to that opinion, you'll see that that's an exception to more general rules stated by this Court in People v. Warren, that this Court's job when interpreting statutes and also when interpreting contracts, like insurance coverage, is to read the statute. And as this Court stated in People v. Warren, that includes looking at the title and trying to harmonize the rest of the statute or document with it. So in Illinois Bell, the appellate court was looking at a statute that had something about local telephone coverage in its title, several provisions of the statute specifically referenced local telephone coverage, and then there was a final broader provision tacked on to the end of the statute, which, contrary to the rest of the statute, did not specifically say that it related to local telephone coverage. So what the appellate court did in that instance was said, that decision by the legislature must have been intentional. They knew throughout the statute when they wanted it to apply to local telephone coverage, but then they tacked on this broader provision at the end, didn't include that specific reference. So even though the title said that the statute's about local telephone coverage, we're not going to restrict the final section of the statute in that way because of this exception to the more general rule that I just mentioned from People v. Warren. So unless the Court has any other questions of me, I will take my seat. Mr. Lucas? Briefly, Your Honors, the first point I would make on rebuttal is, this Sikora lawsuit is not a defamation case. It doesn't involve defamation coverage. It involves separate coverage, which is, you know, defamation coverage. It's the invasion of privacy coverage. And when this Court defined the term, publication for the invasion of privacy coverage, it did not look to policy definition or dictionary definitions that included a single disclosure, which we agree is a publication in the defamation context. But the coverage, the term should be construed as a defamation coverage. It should be construed in the context of its use within the coverage. And here, the coverage we're talking about is invasion of privacy. And in that context, publication means communication to the public. And again, I would get back to the fact that we're, since the dictionary definitions make that distinction, that reflects the common understanding of the term publication for defamation versus invasion of privacy. Now, counsel brought up the point of additional disclosures. And I think Your Honor suggested that maybe there were additional disclosures. But the duty to defend is determined by the allegations of the complaint. And the allegations of the complaint here are limited to one, disclosure by Krishna to Sunlink. We don't know if they knew more about the Krishna Schomburg TAN system, the L.A. TAN system. They should have put it in the complaint if they knew that the disclosures of biometric information went beyond the disclosure to Sunlink. We don't know how the program works. All we know is the allegation and the complaint. And that's what controls the duty to defend. And here, the duty to defend was not implicated because publication for invasion of privacy wasn't alleged. And the argument that trying to apply the appellate court's analysis of publication in Valley Forge to both the Supreme Court's interpretation of publication in Valley Forge, in this case, misses the point. Because in the appellate court in Valley Forge, the insurers were arguing that the coverage was limited to invasions of secrecy interests. And a TCPA claim doesn't invade a secrecy interest because a TCPA claim invades a security interest. But this court held in Valley Forge that the privacy coverage included both, secrecy and security. So the third-party versus direct-to-victim argument doesn't go to publication. What that goes to is the nature of the information. And the third-party argument is the nature of the privacy interest being invaded by the insured in its communication. In a TCPA claim, it's security sending out an unwanted fax ad. In BIPA, it's disclosure to a third-party. That's secrecy. TCPA is the nature of the interest being invaded, not to publication. Publication looks at the conduct of the insured. And is the insured, in the invasion of privacy context, communicating to a large group of people, to the public at large? Or is it communicating to an individual? And in the invasion of privacy context, communication to the individual is the public. And so looking at the appellate court opinion in Valley Forge isn't going to move this issue along, the publication issue. And finally, regarding the violation of statutes exclusion, we're not trying to isolate the exclusion. We are arguing that the exclusion has to be read as a whole. And when it's read as a whole, it applies to statutes which prohibit or limit the communication of information, including TCPA, including CAN-SPAN, and including BIPA, because BIPA precludes or limits or prohibits the use of statutes. And so we're not trying to isolate the exclusion or the distribution, communication of information. And because the appellate court was incorrect in its interpretation of the coverage, of the invasion of privacy coverage, and because it was incorrect in its interpretation of the exclusion, we ask this court to reverse the appellate court judgment and find that West Bend does not have a duty to defend Krishna in the underlying Sakuro lawsuit. Thank you. Case number 125978, Insurance Company v. Krishna Chandra Pan, will be taken under advisement as agenda number